# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Northern Cambria School District      :
                        :
          v.                 :    No. 472 C.D. 2017
                        :    Argued: February 6, 2018
Northern Cambria Education Support    :
Professional Association, PSEA/NEA,    :
                Appellant     :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge


OPINION
BY JUDGE BROBSON              FILED: March 5, 2018


Northern Cambria Education Support Professional Association, PSEA/NEA (Association) appeals from an order of the Court of Common Pleas of Cambria County (Common Pleas), vacating an arbitration award. For the reasons discussed below, we reverse.

The facts underlying this matter are not in dispute. Effective July 1, 2014, the Association and Northern Cambria School District (District) entered into a collective bargaining agreement (CBA), which set forth the terms and conditions of employment for individuals employed by the District. On July 1, 2015, the District's board of directors approved a motion to transfer Linda Kolasa (Kolasa) from her current position of full-time custodian to the position of full-time aide. The District created the position in response to a student who necessitated full-time supervision. The student is described as being extremely challenging due to having severe autism and severe mental and emotional disabilities. After Kolasa's transfer,

the Association notified the District that, in order to comply with the CBA, the District must first post the position and interview applicants. The District complied and rescinded the earlier decision to transfer Kolasa.

Article VIII, Section 3 of the CBA outlines the procedure the District must follow to fill vacant positions. In part, Article VIII, Section 3(B) provides:

> Positions will be awarded on the basis of seniority and provided that the employee has the skill, ability, and qualifications to perform the work available without further training in accordance with [the District's] requirements:
>
> First – applicants from within the posted classification, including persons on layoff
>
> Second – other qualified applicants from within the bargaining unit, including persons on layoff
>
> Third – qualified substitute employees and new applicants.

(Reproduced Record (R.R.) at 23a-24a.)

Pursuant to the CBA provisions, the District posted the position and interviewed five of the twenty applicants: (1) Kolasa; (2) Theresa Orosz (Orosz); (3) Malorie Butterworth (Butterworth); (4) Peggy Westover (Westover); and (5) Annette Weiland (Weiland). With the exception of Kolasa, who maintained a position as a full-time custodian, the other four interviewees maintained part-time aide positions with the District. (Award at 7.) The most senior of the part-time aides was Orosz, with Butterworth being the second-most senior, and Westover and Weiland ranking third and fourth, respectively. (*Id.*) Following the interview process, the District awarded the position to Kolasa.

Thereafter, the Association filed a grievance contending that the District failed to follow Article VIII, Section 3(B) of the CBA in filling the full-time aide position. (R.R. at 54a.) After failing to achieve an acceptable resolution

2

internally, the Association appealed the grievance to an arbitrator, pursuant to the procedures set forth in the CBA. A single arbitrator held a hearing.

Per the grievance and arguments presented by the parties, the arbitrator framed the primary issue as "whether the District violated the parties' [CBA] in filling an Aide position? [And i]n the event the District is found to have violated the [CBA], a second issue is what should the remedy be." (Award at 2.) By decision and award dated October 11, 2016 (Award), the arbitrator concluded that the District violated the priority structure for filling vacant positions pursuant to Article VIII, Section 3 of the CBA. Although acknowledging that Kolasa likely possessed the best qualifications for the position, the arbitrator reasoned:

> Under the [CBA]'s clearly stated priority structure for awarding new or vacant positions, unless the most senior applicant within the classification lacked the skill, ability and qualifications to perform the work available without further training in accordance with the District's requirements, that applicant was entitled to be awarded the position. Although [Kolasa] had over 20 years . . . of service as an Aide, she had been a Custodian for three school years before August[] 2015, and occupied such a classification when the Aide position was posted for bids. Under the priority scheme the parties had agreed to [in] Article VIII, Section 3, Subsection B, the four part-time Aides who bid on the opening, and were interviewed by the District, all had contractual rights superior to [Kolasa] to be awarded the position, unless they lacked the skill, ability and qualifications to perform the available work, within the District's requirements, and without further training.

(*Id.* at 14.)

Having concluded that Orosz, Butterworth, Westover, and Weiland had superior contractual rights to the full-time aide position, the arbitrator then considered whether those applicants possessed the necessary skill, ability, and

3

qualifications for the position. In so doing, the arbitrator first reviewed the qualifications of Orosz, the most senior applicant. Due in part to Orosz's poor performance in her interview, the arbitrator concluded that the District did not violate the CBA by rejecting Orosz's bid for the position. (*Id.* at 15.) The arbitrator then reviewed the qualifications of Butterworth—the second-most senior applicant—and concluded that she should have been awarded the position. (*Id.*) In support of this decision, the arbitrator cited Butterworth's twenty-plus year tenure as an aide with the District, in addition to noting that "[t]here was no evidence presented which would indicate she lacked the skill, ability and qualifications." (*Id.*)

The District filed in Common Pleas a petition to vacate the Award, and the Association filed its answer and new matter, seeking confirmation of the Award. Before Common Pleas, the District argued that the Award is not rationally derived from the testimony heard by the arbitrator and is contrary to law, because it does not draw its essence from the terms of the CBA.

By order dated March 17, 2017, Common Pleas vacated the Award, concluding that substantial evidence did not exist to support the Award and that the arbitrator improperly shifted the burden of proof. In so concluding, Common Pleas determined there to be no record evidence that would support a finding that Butterworth had the skill, ability, and qualifications for the position and further determined that the arbitrator improperly shifted the burden of proof regarding the applicant's qualifications from the Association to the District. Specifically, Common Pleas construed the Award's statement that there was no evidence that would indicate that Butterworth *lacked* the skill, ability, and qualifications for the position as improperly shifting the burden. Finally, Common Pleas concluded that

Section 7302(d)(2) of the Uniform Arbitration Act,[1] 42 Pa. C.S. § 7302(d)(2), also mandated that the Award be vacated. Common Pleas opined that "had this been a jury trial, there is no evidence of record that would support a verdict in favor of [the Association,] and the Court would be required to grant a judgment n.o.v." (Common Pleas op. at 11.) The Association then appealed to this Court.

On appeal, the Association argues that Common Pleas erred in vacating the Award because Common Pleas applied an incorrect standard of review. Specifically, the Association argues that Common Pleas erroneously reviewed the Award under Section 7302(d) of the Uniform Arbitration Act, instead of reviewing the Award under what is commonly referred to as the "essence test."[2] This Court has noted that "our Supreme Court has repeatedly held that *only* the essence test applies in appeals from public sector grievance arbitration awards." *Tunkhannock Area Sch. Dist. v. Tunkhannock Area Educ. Assoc.*, 992 A.2d 956, 958 (Pa. Cmwlth.) (emphasis added), *appeal denied*, 8 A.3d 347 (Pa. 2010).

Here, although Common Pleas' opinion briefly references the essence test, its holding rested upon its application of the judgment n.o.v. standard present in Section 7302(d) of the Uniform Arbitration Act. (Common Pleas op. at 5.) Further, in its Rule 1925 opinion, Common Pleas completely abandoned any

---

[1] Section 7302(d)(2) of the Uniform Arbitration Act provides, in pertinent part:

[A] court in reviewing an arbitration award pursuant to this subchapter shall . . . modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict.

[2] In its brief, the Association also argues that Common Pleas erred in concluding that the Award violated public policy. Common Pleas, in its Rule 1925 opinion, however, clarified that it did not vacate the Award based on a violation of public policy. Moreover, we dispose of this matter on other grounds. Thus, we need not address this argument further.

reference to the essence test, insisting that Section 7302(d) "required the award to be set aside." (R.R. at 82a.) Despite the inherent similarities between the essence test and the judgment n.o.v. standard in Section 7302(d),[3] we conclude that Common Pleas erred to the extent that it assumed these two tests are interchangeable instead of applying only the essence test. Having concluded that the essence test is the proper standard, we next must determine whether, applying the essence test, Common Pleas could properly vacate the Award.

Under the exceptionally deferential essence test, an arbitrator's award must draw its essence from the collective bargaining agreement. *State Sys. of Higher Educ. (Cheyney Univ.) v. State Coll. Univ. Prof'l Ass'n (PSEA-NEA)*, 743 A.2d 405, 413 (Pa. 1999). When applying the essence test, an award should be upheld if: (1) the issue as properly defined is within the terms of the agreement, and (2) the award can be rationally derived from the agreement. *Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educ. Support Pers. Ass'n, PSEA/NEA*, 939 A.2d 855, 863 (Pa. 2007). That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement. *Cheyney Univ.*, 743 A.2d at 413. Here, it is essentially undisputed by the parties that the first prong of the essence test is met, because the

---

[3] In *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 375 A.2d 1267 (Pa. 1977), our Supreme Court noted the similarities between the two standards, stating that "the 'n.o.v.' concept . . . is hardly a radical change, nor does it dictate that a much closer or different scrutiny of an arbitration award will be available under the [essence test]." *Cmty. Coll. of Beaver Cnty.*, 375 A.2d at 1273. Despite these similarities, our Supreme Court has stated that *only* the essence test applies in appeals from public sector grievance arbitration awards, and this Court, therefore, is compelled to review the Award under the essence test. *See Tunkhannock*, 992 A.2d at 958.

District's process that resulted in Kolasa being awarded the full-time aide position is within the terms of the CBA.[4]  As a result, we are left only to determine whether the Award can be rationally derived from the CBA.

In reviewing an arbitrator's award, we are mindful that an arbitrator's findings of fact are not reviewable on appeal, and as long as he has arguably construed or applied the collective bargaining agreement, an appellate court may not second-guess his findings of fact or interpretation. *Coatesville Area Sch. Dist. v. Coatesville Area Teachers' Ass'n / Pa. State Educ. Ass'n*, 978 A.2d 413, 415 n.2 (Pa. Cmwlth. 2009), *appeal denied*, 989 A.2d 10 (Pa. 2010).  A court may not reject an arbitrator's findings simply because it disagrees with them, nor may the court substitute its judgment for that of the arbitrator.  *Am. Fed'n of State, Cnty. & Mun. Employees, Dist. Council 88, AFL-CIO v. City of Reading*, 568 A.2d 1352, 1355-56 (Pa. Cmwlth. 2006) (*Reading*).

Here, we determine that the Award—concluding the District violated the terms of the CBA in awarding the full-time aide position to Kolasa instead of Butterworth—can be rationally derived from the CBA.  As previously mentioned, the CBA dictates that the District fill vacant positions in order of seniority, provided that the applicant possesses the necessary skills, abilities, and qualifications. (R.R. at 23a.)  Among the qualified applicants, first priority is given to applicants from within the posted classification, second priority is given to other qualified applicants from within the bargaining unit, and third priority is given to qualified substitute employees and new applicants.  (*Id.* at 23a-24a.)  As noted in the Award,

---

[4] If a grievant raises an issue that is "arguably dealt with by the bargaining agreement then arbitration is required." *Ringgold Sch. Dist. v. Abramski*, 426 A.2d 707, 710 (Pa. Cmwlth. 1981). If a collective bargaining agreement embraces the issue raised, the arbitrator has jurisdiction over the dispute. *Pa. Tpk. Comm'n v. Teamsters Local Union No. 77*, 45 A.3d 1159, 1164-65 (Pa. Cmwlth. 2012).

of the five applicants interviewed for the position, all but Kolasa were from within the posted classification, thereby granting the other four interviewees (Orosz, Butterworth, Westover, and Weiland) superior contractual rights to the position so long as they possessed the requisite skill, ability, and qualifications.[5] (Award at 14.)

Having determined that Kolasa had the lowest priority for purposes of the position, the arbitrator sought to evaluate the skills, abilities, and qualifications of the other interviewees in order of seniority. In this endeavor, the arbitrator looked first to the most-senior of the interviewees, Orosz. Although being highly experienced, the arbitrator found that Orosz's poor interview and previous negative interactions with the troubled student reflected poorly upon her qualifications for the position. (*Id.* at 15.) Accordingly, the arbitrator concluded that Orosz did not possess the required skill and ability for the vacant position.

Next, the arbitrator reviewed the qualifications of Butterworth, the second-most senior applicant. The arbitrator noted that Butterworth worked for the District since October of 1993, and she had worked as an aide throughout her twenty-plus years with the District. (*Id.* at 16.) Further, the evidence presented established that Butterworth (and the three other part-time aides) completed twenty hours of yearly continuing education and training, whereas Kolasa had not. (*Id.* at 10.) Based on this evidence, the arbitrator concluded that Butterworth possessed the necessary skill, ability, and qualifications for the full-time aide position. (*Id.* at 16.) Accordingly, the arbitrator concluded that the District violated the terms of the CBA by awarding the position to Kolasa, as opposed to Butterworth. (*Id.* at 19.)

---

[5] We note that although Kolasa had over twenty years of prior service as an aide, she had been a custodian at the time of the vacancy posting, thereby placing her in the second tier of the CBA's priority structure.

Common Pleas, in vacating the Award due to a lack of substantial evidence, focused on the arbitrator's statement that "[t]here was no evidence presented which would indicate [Butterworth] lacked the skill, ability, and qualifications" for the position. (Common Pleas op. at 6-8.) This, in the eyes of Common Pleas, not only signified a lack of evidence establishing Butterworth's qualifications, but also improperly shifted the burden of proof from the Association to the District. (*Id.* at 8-10.) In so holding, Common Pleas seemingly disregarded not only the evidence presented but also the manner in which the arbitrator evaluated the interviewees' qualifications.

In the Award, the arbitrator utilized a similar style of analysis for both Orosz and Butterworth, wherein the candidate's qualifications would be presented alongside any evidence that tended to diminish those qualifications. With respect to Orosz, the Award first presented her qualifications, then discussed the evidence that mitigated those qualifications. (Award at 14-15.) The same style of analysis can be seen with the Award's discussion of Butterworth. Immediately following the statement that there was no evidence establishing that Butterworth lacked the necessary skill, ability, or qualifications, the arbitrator noted that Butterworth's long tenure as an aide with the District, in addition to previously stating that she had completed twenty hours of yearly continuing education. (*Id.* at 14, 16.) The arbitrator, therefore, did not shift the burden of proof.[6] Instead, the arbitrator

---

[6] We note that the Award clearly stated the correct burden of proof. After concluding that the other applicants had superior contractual rights to the position over Kolasa, the arbitrator explained: "I must next consider whether the evidence established that the part-time Aides who submitted bids, in the order of seniority, met the contractual requirements that they possess the skill, ability and qualifications to perform the available work within the District's requirements and without further training." (Award at 14.)

presented the facts that established Butterworth's qualifications and addressed any evidence to the contrary.

In vacating the Award, Common Pleas found that the arbitrator's findings regarding Butterworth's qualifications were not supported by substantial evidence. Instead of accepting the arbitrator's findings regarding Butterworth's qualifications, Common Pleas chose to substitute its own judgment for that of the arbitrator. In its opinion, Common Pleas all but disregarded Butterworth's twenty-plus years of service as an aide, providing the following comparison regarding Butterworth's experience:

> The arbitrator's conclusion is the equivalent of a person in need of a capital murder defense attorney selecting the most senior member of the local bar to represent them based solely on the fact that the attorney had been in practice the longest based on the presumption that years of practice gave them the skills to handle the matter without inquiring into whether that attorney practiced criminal law or had ever handled a capital case.

(Common Pleas op. at 9.)

Without commenting on the aptness of Common Pleas' comparison, we note that this re-evaluation of evidence is squarely at odds with our view of the role of binding arbitration within a collective bargaining agreement. As we illustrated in *Reading*:

> In collective bargaining agreements, it is the arbitrator's judgment and all that it connotes that was bargained for. Part of what the arbitrator's judgment connotes is the arbitrator's view of the facts and of the meaning of the contract that the parties have agreed to accept. *Therefore, a court may not reject the arbitrator's findings simply because it disagrees with them* . . . As stated by the [United States] Supreme Court in [*United Paperworkers International Union, AFL-CIO v.*] *Misco*[ *Incorporated*, 484 U.S. 29, 37 (1987)], *"courts therefore are prohibited*

10

> *from second guessing the arbitrator's fact finding and contract interpretation as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," rather than simply applying his own brand of industrial justice.*

*Reading*, 568 A.2d at 1356 (emphasis added).

Here, the arbitrator clearly gave weight to the fact that Butterworth had maintained an aide position with the District for over twenty years. Common Pleas, however, improperly chose to provide its own evaluation of Butterworth's qualifications, as opposed to evaluating whether the arbitrator arguably applied the terms of the CBA in granting the Award.

For the reasons set forth above, we conclude that the Award is not "indisputably without foundation," nor does it "fail[] to logically flow from" the CBA. *See Coatesville Area Sch. Dist.*, 978 A.2d at 415 n.2. Because the Award can be rationally derived from the CBA, it satisfies the second prong of the essence test. The Award, therefore, draws its essence from the terms of the CBA, and Common Pleas erred in concluding otherwise.

Accordingly, we reverse Common Pleas' order and reinstate the Award.

<br>

P. KEVIN BROBSON, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Northern Cambria School District     :
    :
       v.     :    No. 472 C.D. 2017
    :
Northern Cambria Education Support     :
Professional Association, PSEA/NEA,     :
                Appellant     :

## **O R D E R**

AND NOW, this 5th day of March, 2018, the order of the Court of Common Pleas of Cambria County is REVERSED, and the arbitration award, dated October 11, 2016, is REINSTATED.

 

                              _____

                              P. KEVIN BROBSON, Judge