IN THE COMMONWEALTH COURT OF PENNSYLVANIA

California Area School District          :
                                         :    No.  1570 C.D. 2018
            v.                           :
                                         :    Argued:  May 6, 2019
California Area Education Association     :
PSEA/NEA,                                :
                    Appellant            :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge


OPINION BY
JUDGE McCULLOUGH                                    FILED:  July 10, 2019


            California Area Education Association, PSEA/NEA (Union) appeals from
the August 22, 2018 order of the Court of Common Pleas of Washington County (trial
court) that, upon the Union's motion for reconsideration, vacated a May 29, 2017
grievance arbitration award and remanded the matter to the arbitrator for further
proceedings.


**Facts and Procedural History**

            The Union is the exclusive representative of a collective bargaining unit
of professional employees of the California Area School District (District).  (2014-
2019 Collective Bargaining Agreement (CBA) between the District and the Union at
Art. I, Reproduced Record (R.R.) at 242a.)  Before the start of the 2016/17 school year,
the District decided to eliminate two specialist positions, including a full-time high
school librarian and a half-time elementary school art teacher.  (Arbitration Award at
3, 8.)  On August 30, 2016, the Union filed a grievance alleging that the District's
elimination of the two specialist positions violated Article IX of the CBA.  *Id.*  Article

IX.A of the CBA, titled "Specialists," and sub-titled "Minimum," provides that the District and the Union "recognize[] the fact that an adequate number of competent specialists is essential to the operation of an effective education program." (CBA at Art. IX.A.) After the initial steps of the grievance procedure failed to resolve the grievance, the matter proceeded to arbitration and an arbitration hearing was conducted on March 15, 2017.

## A. The Arbitration Award

At arbitration, the District took the position that (1) the CBA does not require a specific number of specialists; (2) the duties of the specialist positions that were eliminated were reassigned to other members of the staff for the school year; and (3) there was no violation of the CBA. (Arbitration Award at 5.) In contrast, the Union took the position that (1) the District violated Article IX of the CBA because "the elimination of the two positions resulted in a not 'adequate number of specialists'" as required by the CBA; and (2) the District was no longer offering an effective educational program for its students because the two specialists were eliminated. *Id.* (quoting CBA at Art. IX.A.)

In his award, the arbitrator found that during the 2015/16 school year, a full-time high school librarian and half-time elementary school art teacher retired. (Arbitration Award at 6.) Thereafter, the District decided that, rather than hire new teachers to replace the retired employees, it could parcel out the duties of the art teacher and librarian to the remaining staff. *Id.* Thus, instead of hiring replacements for the retired employees, the District filled the vacancies by reassignment of existing teachers. *Id.* "This resulted in a two employee reduction in the District, without a reduction in force or layoff situation occurring," meaning that "the staffing level was decreased through attrition." *Id.* The arbitrator noted that the specialist reduction occurred due to economic conditions. *Id.* at 7.

2

The arbitrator concluded that, although the CBA does not require a specific or enumerated number of specialists, "the CBA and the Pennsylvania School Code[1] clearly identified that a reduction in force (RIF) cannot effect [sic] or reduce the learning methods or opportunities to the arts or other services such as library services[,] which would be provide[d] by the 'specialists.'" *Id.* at 6. The arbitrator found that after the full-time high school librarian and half-time elementary art positions were eliminated, art instruction in the elementary school was conducted by regular elementary classroom teachers, but that students were no longer "able to use the library every day in the afternoon, as they had in prior school years," and that the high school "library was only staffed by [a] librarian for one period, the last period, of every school day." *Id.* at 3.

With regard to the elimination of the art teacher position, the arbitrator determined that since elementary school art was still being taught by "assigned grade regular elementary teachers within the District, [t]hese regularly assigned elementary teachers may or may not be accomplishing the art objectives of prior years as taught by the specialist then on staff." *Id.* at 7. The arbitrator noted that the regular elementary teachers "may or may not [have been] certified in elementary art." *Id.* The arbitrator decided that "even though the reduction of the one-half time [a]rt [p]osition did make some hardships and deficiencies in the [a]rt [e]ducation in the elementary school, the reassignment of those duties" to regular full-time elementary school teachers appeared to "meet the needs of the students and, therefore, the requirements of the [CBA] for staffing." *Id.* at 8. The arbitrator clarified that his opinion assumed that an art certification is not a statutory requirement for teaching art to elementary school students, but that, if such a certification is required, the requirement was not being

---

[1] Presumably, the arbitrator was referring to the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§1-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.

satisfied.  *Id.* at 8-9.  However, the arbitrator noted there was no testimony presented at the hearing that such a certification is required.  *Id.* at 9.

Regarding the elimination of the librarian position, the arbitrator determined that "[t]he unrefuted testimony of the [Union]'s witnesses was that the elimination of the high school library position did result in a significant reduction in the number of books being checked out and utilization of the library itself."  *Id.* at 7. The arbitrator explained that "[t]he testimony was that last year in the time period from September through March, there were over 700 books checked out," but that in the same time period for the 2016/17 school year, only 9 books were checked out.  *Id.*  The arbitrator concluded this was "a significant reduction in the usage of the facility."  *Id.* The arbitrator also observed that the library was only open and staffed for one period per day.  *Id.*  Additionally, he found that in previous years the library developed an Individual Education Plan (IEP) for gifted students, but noted that it was the opinion of the librarian witness that the needs of the gifted students were currently not being met by reassigning the IEP plan development.  *Id.* at 8.  The arbitrator also found that the high school librarian previously taught a journalism class for gifted students, which was no longer being offered.  *Id.*  The arbitrator determined, however, that in prior years the librarian had performed ancillary duties, such as supervising the yearbook, and that these duties had been reassigned to other staff members.  *Id.*

Ultimately, the arbitrator concluded that "the [l]ibrary [f]acility and the needs of the student population [were] not being met by the current reduction of the full-time [l]ibrarian position," and that "the needs of the students [were] not being met by reassignment of some of the duties previously performed by the [l]ibrarian or the elimination of some of the other classes or duties that were previously performed by the [l]ibrarian."  *Id.*  He also determined that the staff reduction had materially affected the students' needs, that "the current staffing level [did] not meet the specialist requirements of the CBA," and that, therefore, the "current staffing scenario of the

4

[l]ibrarian position [did] not satisfy [the] adequate number of competent specialists requirements" of the CBA. *Id.* at 9. Accordingly, on May 29, 2017, the arbitrator issued an award that granted the grievance in part. *Id.* The arbitrator ordered the re-establishment of the full-time librarian position, but upheld the elimination of the art teacher position "provided that there [was] no Elementary Art Certification requirement in the School Code." *Id.*

### B. The Trial Court's June 25, 2018 Order and Opinion

The District filed a petition to vacate the arbitration award with the trial court, arguing that the arbitrator exceeded his jurisdiction and that the arbitration award was contrary to law and public policy. On June 25, 2018, the trial court issued an opinion and order vacating the arbitration award and remanding for further proceedings. (Trial court order, 6/25/18.)

In its opinion in support of its order, the trial court purportedly relied on the "essence test" to conclude that the arbitration award was not rationally derived from the CBA. (Trial court op., 6/25/18, at 5.) The trial court determined that the arbitrator's finding "that the CBA did not permit a reduction in the number of specialists to effect [sic] or reduce learning methods or opportunities" did not logically flow from the CBA. *Id.* Specifically, the trial court noted that the phrase "learning methods and opportunities" was not defined in the CBA and that the parties did not include any language in the CBA that indicated the metric for an effective educational program was an aggregate assessment of the number of learning methods and opportunities provided by specialists. *Id.* The trial court also observed that the arbitrator did not cite to any specific provision of the CBA as the source of the metric he implemented, but merely made generic references to the CBA and School Code. The trial court concluded that these unspecified references were legally insufficient and that the arbitrator was required to indicate which provisions of the CBA he relied upon to enforce a

5

requirement not expressed in Article IX.A of the CBA. *Id* at 6. The trial court also held that the arbitrator's reference to the School Code posed a challenge to its review because it was unclear upon which article of that law the arbitrator relied. *Id.* The trial court determined that an arbitration award is properly vacated where the arbitrator rests his interpretation on a phrase not contained in the CBA and goes outside the CBA to make his determination. *Id.*

The trial court also found that the arbitrator analyzed the presumed educational needs of the District's students, but failed to assess the intent of the parties when they included Article IX.A in the CBA. *Id.* at 6-7. The trial court concluded that in the absence of a finding by the arbitrator "regarding the parties' **intent and the basis for such finding**," the trial court could not determine if the arbitrator's discussion of student needs drew its essence from the CBA. *Id.* at 7 (emphasis in original).

Finally, the trial court decided that, although the arbitrator found that the elimination of both positions was a RIF through attrition, the arbitrator did not discuss Article XXV of the CBA, which provides, "[r]eductions may occur by attrition or by a drop in student population, provided that the bargaining unit/student ratio as of September 1, 1982 is not increased." *Id.* (emphasis omitted) (quoting CBA at Art IX.A.) The trial court noted that the arbitrator did not address the teacher/student ratio that was mentioned in the CBA and did not give any consideration to the interplay between Article XXV and Article IX of the CBA. *Id.* at 8. The trial court explained that the elimination of the two positions may or may not have violated Article XXV, but that the arbitrator appeared to have overlooked this provision *Id.*

Accordingly, the trial court concluded that the arbitrator incorrectly construed and applied the CBA. *Id.* at 9. The trial court decided that because the court "confined its decision to the four corners of the CBA," vacating the arbitration award and remanding for further proceedings was the appropriate remedy. *Id.* Therefore, the trial court vacated the order and remanded to the arbitrator, directing him to (1)

determine the parties' intent as expressed in Article IX of the CBA; (2) specifically identify and cite in any future written decision the portion of the CBA and any outside sources that he relied upon to determine intent; (3) consider whether Article IX.A of the CBA should be read *in pari materia* with Article XXV of the CBA; and, if so, (4) determine whether the grieved action was permitted or prohibited by a proper interpretation of Articles IX.A and XXV of the CBA. (Trial court order, 6/25/18.)

### C. The Arbitrator's Clarification Letter

Subsequently, on July 19, 2018, the arbitrator submitted a letter to the trial court in response to the trial court's remand order. (R.R. at 93a.) The arbitrator initially noted that throughout his 40 years as an arbitrator he had been taught the doctrine of "Functus Officio," meaning that a labor arbitration award is complete when issued, and that although the trial court had vacated his award, "[r]emands in labor do not occur with a final order." *Id.*

In his letter, the arbitrator reiterated many of the findings from the arbitration award. Additionally, the arbitrator noted that his decision was based on testimony offered during the approximately two-hour hearing and on post-hearing briefs, and that the District's brief only responded to the allegation of violations of Articles I and IX of the CBA. (R.R. at 96a.) He stated that he considered all factors that were discussed in the testimony, but that "[t]here was no testimony or argument presented concerning the intent of the [p]arties in negotiating sessions or any negotiations leading to" the current CBA or the intent behind specific language of the CBA. *Id.* He explained that the CBA's clear and unambiguous language was used to determine the award within the four corners of the CBA. (R.R. at 97a.)

Further, the arbitrator noted that the parties negotiated Article IX.A of the CBA, but that there was no discussion, testimony, or arguments as to what led to the specific language in Article IX.A. *Id.* While the parties did not define an exact number

of specialists in the CBA, the arbitrator explained that he relied on the Union's testimony that the District previously employed a significant number of competent specialists, including the librarian position, to conclude that regardless of the total number of specialists, the elimination of the librarian position resulted in there being one less competent specialist. (R.R. at 97a-98a.) The arbitrator expounded that his award logically flowed from the CBA because an adequate number of specialists—specifically librarians—were no longer "available for the students and an effective educational program." (R.R. at 98a.) He found that this was supported by the District's own records of library book usage. *Id.*

Moreover, the arbitrator pointed out that he did not discuss Article XXV of the CBA because it was not raised by either party and the District did not claim the reduction in personnel resulted from a decline in population or enrollment, which would trigger Article XXV. *Id.* He explained that he confined his award to the arguments and positions made by the parties and did not cite provisions of the CBA that were not discussed by the parties. (R.R. at 99a.) In any event, the arbitrator noted that Article XXV would not have applied because none of the factual scenarios contemplated by Article XXV had occurred. *Id.* The arbitrator concluded that he hoped his comments gave insight into his thought process in developing the award and that he believed he had complied with the order of the trial court. (R.R. at 100a.)

**D. The Trial Court's August 22, 2018 Order and Opinion**

On July 23, 2018, the Union filed a motion for reconsideration of the trial court's June 25, 2018 order, urging the trial court to reconsider its earlier order and to confirm the May 29, 2017 arbitration award, based on the letter submitted by the arbitrator in response to the trial court's remand order. On July 26, 2018, the trial court granted the Union's motion for reconsideration and issued a briefing and argument

8

schedule.[2]  (R.R. at 122a.)  On August 22, 2018, the trial court again issued an opinion and order vacating the arbitration award and remanding for further proceedings.  (Trial court order, 8/22/18.)

In the memorandum opinion in support of its August 22, 2018 order, the trial court first summarized its concerns with the arbitration award that were previously discussed in its June 25, 2018 opinion.  The trial court explained that after it vacated the award and remanded to the arbitrator to conduct further proceedings addressing the trial court's concerns, the arbitrator failed to follow its instructions.  In particular, the trial court found that the arbitrator's clarification letter was not helpful and did not eliminate the trial court's concerns.  (Trial court op., 8/22/18, at 6.)  The trial court determined that the arbitration award and clarification letter failed to "consistently articulate and apply [the arbitrator's] interpretation of the CBA" and that the arbitrator did not support his conclusion that the elimination of the library position resulted in one less competent specialist with citations "to any express provision found within the four corners of the parties' CBA."  *Id.*  The trial court found the arbitrator's interpretation of Article IX.A inconsistent because, if the elimination of the librarian position violated Article IX.A, "then the elimination of a part-time art position also offend[ed] the CBA," but that the arbitrator "did not so find."  *Id.*

The trial court held that the essence test does not permit an arbitrator, "no matter how skilled or experienced, to change his interpretation of the parties' bargained for language based upon the equities of the circumstance" and that while the award and letter adequately expressed the equities the arbitrator considered, "they did not explain how his decision squares with the parties['] CBA and an interpretation that logically flows from it."  *Id.* at 7-8.  The trial court also faulted the arbitrator again for failing to

---

[2] On July 23, 2018, the Union appealed the trial court's June 25, 2018 order to this Court. After the trial court granted the Union's motion for reconsideration, this Court struck the Union's notice of appeal.

9

identify the provision of the School Code "or the other portions of the 'four corners of the CBA' upon which he relied" and stated that the letter did not assist the trial court in determining whether the arbitration award "logically flow[ed] from the CBA or [was] properly based upon an outside source of law." *Id.* The trial court also found that the arbitrator's conclusion that Article XXV of the CBA did not apply to the dispute was inexplicable, given that Article XXV dealt with reductions occurring by attrition and the arbitrator specifically found that the District eliminated the two positions due to attrition. *Id.* at 9. The trial court reiterated that the arbitration award did not address the teacher/student ratio expressly agreed to in Article XXV and did not consider the interplay between Articles XXV and IX.A. *Id.*

Finally, the trial court concluded that the arbitrator "refused to carry out [the trial] court's order of remand." *Id.* at 10. It stated that although it was "neither hostile to nor distrustful of [the arbitrator's] independence and judgment," the trial court "must properly perform its review function." *Id.* The trial court issued an order identical to its June 25, 2018 order. Again, the trial court vacated the arbitration award and remanded the matter to the arbitrator, directing him to (1) determine the parties' intent as expressed in Article IX of the CBA; (2) specifically identify and cite in any future written decision the portion of the CBA and any outside sources that he relied upon to determine intent; (3) consider whether Article IX.A of the CBA should be read *in pari materia* with Article XXV of the CBA; and if so, (4) determine whether the grieved action was permitted or prohibited by a proper interpretation of Articles IX.A and XXV of the CBA. *Id.* (Trial court order, 8/22/18.)

## Discussion

On appeal, the Union argues that (1) the arbitration award satisfies the essence test and the trial court failed to properly apply the essence test; (2) the trial

court's order remanding the matter to the arbitrator after vacating the award was a legal nullity and, therefore, a final appealable order; and (3) the trial court's order is, at the very least, appealable as a collateral order.

Initially, we note that grievance awards are reviewed under the deferential essence test, which requires an award to be confirmed if (1) the issue as properly defined is within the terms of the agreement; and (2) the award can be rationally derived from the agreement. *Fraternal Order of Transit Police v. Southeastern Pennsylvania Transportation Authority*, 114 A.3d 893, 898 (Pa. Cmwlth. 2015). A reviewing court will not second-guess the arbitrator's fact-finding or interpretation as long as the arbitrator has arguably construed or applied the CBA. *Id.* Indeed, this Court will only vacate an arbitrator's award under the essence test "where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement." *Slippery Rock University of Pennsylvania, Pennsylvania State System of Higher Education v. Association of Pennsylvania State College & University Faculty*, 71 A.3d 353, 358 (Pa. Cmwlth. 2013).

### A. Whether the Trial Court's August 22, 2018 Order was a Final Appealable Order

We first address whether the trial court's order was a final appealable order. The Union argues that, in the context of public-sector labor arbitration, vacatur of an arbitration award is a final appealable order because it sets aside the award, thereby ending the dispute and clearing the way for further appeal, and deprives the parties of the result of their agreed-to method of dispute resolution. The Union asserts that under the essence test and the Pennsylvania Public Employe Relations Act (PERA),[3] a court is not permitted to remand a matter to the arbitrator for the reasons

_____

[3] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§1101.101-1101.2301.

11

discussed by the trial court. Because the remand order was not permitted under the deferential essence test, the Union maintains that it was an *ultra vires* act that was a legal nullity and, therefore, the vacatur was a final order. The Union claims that by requiring the arbitrator to use a form of citation in his award, ordering the arbitrator to address a separate CBA provision, and directing the arbitrator to engage in specific reasoning about how several CBA provisions interact, the trial court encroached upon the arbitration process and eroded the essence test. In support of its argument, the Union relies on the New Jersey Supreme Court case of *Tretina Printing, Inc. v. Fitzpatrick & Associates, Inc.*, 640 A.2d 788, 795 (N.J. 1994), which concluded that ambiguities in how an arbitrator calculated an award did not provide a basis for resubmitting the award to the arbitrator for clarification.

In contrast, the District argues that the trial court's remand order precludes a determination that it was final and subject to appeal. The District contends that the trial court was permitted to remand the matter to obtain fundamental information necessary to determine whether the arbitration award drew its essence from the CBA. The District cites to *Municipal Employees Organization of Penn Hills v. Municipality of Penn Hills* (Pa. Cmwlth., No. 538 C.D. 2011, filed December 22, 2011) (*Penn Hills I*),[4] as an example of a case where a party appealed to this Court, following the court of common pleas' remand to an arbitrator, and we quashed the appeal because it was interlocutory. The District maintains that just as we quashed the appeal in *Penn Hills I*, we should quash the appeal, here, because the trial court's remand order was interlocutory.

The District also asserts that the Union has waived its argument that the arbitrator's remand order was an *ultra vires* act because it was not raised by the Union

---

[4] Pursuant to this Court's Internal Operating Procedures, an unreported opinion of the Court filed after January 15, 2008, may be cited for its persuasive value. 210 Pa. Code §69.414(a).

before the trial court. The District further argues that even if we address the Union's *ultra vires* argument, it must fail because, pursuant to section 706 of the Judicial Code, 42 Pa.C.S. §706, a court sitting in an appellate capacity, such as the trial court in this instance, is permitted to remand a matter for further proceedings. The District claims that this Court has consistently exercised and/or recognized the right to vacate an arbitration award and remand to the arbitrator as an available option when reviewing an appeal from a labor arbitration award. Additionally, the District asserts that the trial court's remand order was permitted under section 7314 of the Uniform Arbitration Act (UAA), 42 Pa.C.S. §7314, which allows a court to "order a rehearing before the arbitrators who made the award" when the court vacates the order.

Initially, we conclude that the District has not waived the issue of whether the trial court's remand order was an *ultra vires* act. As argued by the Union, its *ultra vires* argument is essentially the same as its argument that the trial court failed to properly apply the essence test, which it raised in its motion for reconsideration before the trial court. We agree and, therefore, decline to find waiver.

It does not appear that this Court has previously addressed the precise question of whether a court of common pleas, when reviewing an arbitration award, may remand to an arbitrator so that the arbitrator can better explain his reasoning and interpretation of a CBA and address specific sections of the CBA. On occasion, this Court has remanded matters to labor arbitrators with further instructions, or upheld trial court orders doing the same. *See, e.g.*, *Municipal Employees Organization of Penn Hills v. Municipality of Penn Hills*, 92 A.3d 865 (Pa. Cmwlth. 2014) (*Penn Hills II*) (upholding trial court order appointing new arbitrator and instructing new arbitrator to focus its hearing solely on findings and issues not decided by the previous arbitrator); *Pennsylvania Turnpike Commission v. Teamsters Local Union*, 45 A.3d 1159, 1167-68 (Pa. Cmwlth. 2012) (vacating arbitration award which concluded that the matter was untimely submitted to arbitration, and remanding to arbitrator to decide merits of

13

the case); *Fire Fighters Local No. 60 of International Association of Firefighters, AFL-CIO v. City of Scranton*, 937 A.2d 600, 606-07 (Pa. Cmwlth. 2007) (concluding the arbitrator violated due process by not permitting a union to introduce evidence regarding the origin of the practice at issue and remanding to the arbitrator with instructions to permit parties to introduce evidence); *Slippery Rock University of Pennsylvania of State System of Higher Education v. Association of Pennsylvania State College and University Faculties*, 916 A.2d 736, 742-43 (Pa. Cmwlth. 2007) (concluding that the arbitrator applied incorrect burden of proof in a proceeding challenging the denial of tenure and vacating and remanding award with instructions to the arbitrator to apply the correct burden of proof). However, in none of these cases did the reviewing court order the arbitrator to better clarify his award by discussing particular evidence and sections of the CBA, as occurred here.

The District relies on section 706 of the Judicial Code and section 7314 of the UAA in support of its position that the trial court was permitted to remand the matter to the arbitrator. While both statutes permit remands, *see* section 706 of the Judicial Code, 42 Pa.C.S. §706 (permitting appellate courts to remand matters); section 7314(c) of the UAA, 42 Pa.C.S. §7314(c) ("If the award is vacated . . . the court may order a rehearing before the arbitrators who made the award"), neither statute addresses the authority to remand matters under the deferential essence test. In fact, this Court has previously concluded that the essence test takes precedence over the UAA where the two conflict. *See Northern Cambria School District v. Northern Cambria Education Support Professional Association, PSEA/NEA*, 180 A.3d 517, 520 (Pa. Cmwlth. 2018) (concluding that "*only* the essence test applies in appeals from public sector grievance arbitration awards" and that the trial court erred to the extent it relied on UAA standard of review (emphasis in original)).

The District also relies on *Penn Hills I* in support of its argument that the trial court's order was interlocutory and, thus, not appealable. In *Penn Hills I*, the

arbitration award granted the grievant employees an additional period of 90 days to work toward compliance with the CBA's residency requirements. *Id.*, slip op. at 4. After the union appealed, the trial court remanded the matter on the grounds the arbitrator had not yet terminated his proceedings. *Id.* On appeal, we concluded that the trial court had correctly remanded the matter, because the arbitrator still needed to determine whether the employees complied with the residency requirements after the expiration of the 90-day period. *Id.* at 7-8. Consequently, because the arbitrator had not yet completed the proceedings, we concluded the appeal was interlocutory. In contrast, here, the arbitration award did not leave any outstanding issues to be decided at a later date.

*Tretina Printing*, relied upon by the Union, is more analogous to the instant case. There, the appellant appealed a lower court decision modifying an arbitration award to the New Jersey Supreme Court. 640 A.2d at 790. The appellant argued that the lower court lacked the authority to modify the award. *Id.* The New Jersey Supreme Court concluded that, except for very limited circumstances, under the relevant New Jersey statute a reviewing court lacked the authority to remand to an arbitrator with instructions to clarify an award, but instead, was only permitted to correct errors in the award. *Id.* at 794. Further, the court stated,

> [W]e may remain uncertain about the analysis that led to the stated result on one discrete issue . . . but asking an arbitrator to explain his or her reasoning works against the very goals of arbitration: finality and expedition. Remands for reconsideration or further explanation threaten the reliability of arbitration awards. Moreover, requiring an arbitrator to justify a decision reflects a lack of faith in the arbitration process . . . .

*Id.* at 795. Thus, the court concluded that ambiguities in how the arbitrator calculated his award "provide[d] no basis for resubmitting the award to the arbitrator for clarification." *Id.* at 796.

15

Additionally, with regard to reviewing an arbitration award under the deferential essence test, in *Northern Cambria School District* this Court stated, "we are mindful that an arbitrator's findings of fact are not reviewable on appeal, and as long as he has arguably construed or applied the collective bargaining agreement, an appellate court may not second-guess his findings of fact or interpretation." *Id.* at 521. Thus, although we have previously allowed remands to arbitrators in limited situations, here, the specific issue is whether the remand order, itself, violated the essence test. This is because, under the essence test, the trial court's review was limited to determining whether the issue, as properly defined, was within the terms of the CBA and whether the arbitration award was rationally derived from the CBA. *Fraternal Order of Transit Police*, 114 A.3d at 898.

When applying the essence test, a reviewing court is authorized to remand a matter to an arbitrator under only narrow circumstances. *See, e.g.*, *Penn Hills II*, *Pennsylvania Turnpike Commission*. Here, however, the trial court's remand order, which essentially instructed the arbitrator to issue a well-reasoned decision by further addressing certain facts and provisions of the CBA, violated the essence test. In particular, instead of determining (1) whether the issue, as properly defined, was within the terms of the CBA; and (2) whether the award could be rationally derived from the CBA, and either vacating or confirming the award, the trial court remanded the matter to the arbitrator to consider additional evidence and provisions in the CBA.

Pursuant to PERA, arbitration of a grievance arising out of the interpretation of a CBA results in a "binding decision" intended as the "final step" of the grievance procedure. Section 903 of PERA, 43 P.S. §1101.903. Once the arbitrator issued his award, here, he relinquished his jurisdiction. Thus, although the trial court possessed the authority to vacate the award, it could not remand to the arbitrator for the reasons stated in its order. As the New Jersey Supreme Court concluded in *Tretina*, ambiguities in how the arbitrator calculated his award "provide no basis for

16

resubmitting the award to the arbitrator for clarification." 640 A.2d at 796. Therefore, because the trial court's remand order was not permitted under the deferential essence test, it was an *ultra vires* act.

Under Rule 341 of the Rules of Appellate Procedure, "an appeal may be taken as of right from any final order." Pa.R.A.P. 341. A final order is an order that disposes of all claims and all parties. *Id.* In *American Federation of State, County and Municipal Employees, AFL-CIO, District Council 83 v. State College Area School District*, 516 A.2d 869 (Pa. Cmwlth. 1986), we held that a lower court order vacating an arbitration award and ordering a *de novo* hearing was not interlocutory because the lower court had vacated the award, which rendered the lower court's order final and, therefore, appealable. *Id.* at 870. Similarly here, we conclude that because the trial court vacated the arbitration award, its order was final. Although the trial court also remanded the matter, this was not permitted under the deferential essence test because it eviscerated the finality of the arbitration award. Consequently, because the trial court vacated the award and its remand order was a legal nullity, the trial court's order is final and appealable pursuant to Rule 341 of the Rules of Appellate Procedure. *See, e.g.*, *PPM Atlantic Renewable v. Fayette County Zoning Hearing Board*, 81 A.3d 896, 901-902 (Pa. 2013) (holding that because a bond order—issued by the trial court after it had already issued a final order disposing of the merits—was *void ab initio*, the trial court's order was final and appealable).[5]

### B. Whether the Arbitration Award Satisfies the Essence Test

Because we hold that the trial court's order was appealable, we next address the Union's arguments on the merits. The Union argues that the arbitration award satisfies the essence test and that the trial court failed to properly apply the

---

[5] Because we conclude that the trial court's order was final, it is unnecessary to address the Union's alternative argument that the trial court's order was appealable as a collateral order.

essence test. It contends that under the CBA, the arbitrator was authorized to interpret terms not defined in the CBA. It notes that CBAs often contain terms that are left undefined and that the purpose of submitting a labor dispute to arbitration is so that the arbitrator may provide a reasonable interpretation of the undefined terms. The Union observes that the arbitrator interpreted Article IX.A of the CBA to conclude that the District must reinstate the librarian specialist position. The Union argues that by objecting to how the arbitrator reached his conclusion regarding Article IX.A, the trial court failed to apply the essence test. The Union also asserts that the trial court's criticism of the arbitrator's "generic references" to the CBA and School Code and order directing the arbitrator to use more specific citations demonstrate that the trial court second-guessed the arbitrator's reasoning, which was not permitted under the essence test.

Applying the essence test, the Union claims that the arbitrated issue was clearly within the terms of the CBA because Article IX.A provides that "an adequate number of competent specialists is essential to the operation of an effective educational program." (CBA at Art. IX.A.) The Union also argues that the award was rationally derived from the CBA because the arbitration award was based on the arbitrator's logical interpretation of the word "adequate." Specifically, the Union contends that the arbitrator's interpretation of "adequate" was reasonable because it was based on testimony that other District teachers could not cover the responsibilities of the library specialist position and that the elimination of the position had resulted in a reduction in library book checkouts and a lack of individualized plans for gifted students. Rather than remand the case to the trial court to properly apply the essence test, the Union urges this Court to reach the merits of the dispute, apply the essence test, and uphold the award.

In contrast, the District argues that because the CBA does not require a specific number of specialists, the arbitrator went beyond the CBA in evaluating the

18

District's programs to determine whether they were sufficiently staffed. Because the arbitration award added to and changed the language of the CBA by requiring the District to reinstate the librarian specialist position, the District claims the award does not satisfy the essence test and that the trial court was correct in vacating it. The District also maintains that the arbitrator based his award on generic references to the CBA and School Code and, therefore, that the arbitration award went beyond the actual language of the CBA.

Under the two-prong approach to judicial review of grievance arbitration awards, a reviewing court must first "determine if the issue as properly defined is within the terms of the [CBA]. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from" the CBA. *Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educational Support Personnel Association*, *PSEA/NEA*, 939 A.2d 855, 863 (Pa. 2007). Consequently, "a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from," the CBA. *Id.*

A reviewing court may not review an award for reasonableness because that will invite a "reviewing court to substitute its own interpretation of the contract language for that of the arbitrator." *Id.* Thus, "a court should not engage in merits review of the matter" and "the essence test does not permit an appellate court to intrude into the domain of the arbitrator and determine whether an award is 'manifestly unreasonable.'" *Id.* As long as the arbitrator has "arguably construed or applied the [CBA], an appellate court may not second-guess his findings of fact or interpretation." *Northern Cambria School District*, 180 A.3d at 521. Moreover, "[i]t is well-established that an arbitrator may fashion a remedy in a particular case that is not explicitly prescribed in the CBA so long as the remedy furthers the essence of the

19

CBA." *Pennsylvania State System of Higher Education, Lock Haven University v. Association of Pennsylvania State College and University Faculties*, 193 A.3d 486, 495 (Pa. Cmwlth. 2018). An arbitrator enjoys "latitude and flexibility in fashioning a proper remedy and should not be limited in his or her problem solving to the exact language" of the CBA. *Id.*

However, "[a]n arbitrator is confined to interpretation and application of the [CBA]; he does not sit to dispense his own brand of industrial justice." *Westmoreland*, 939 A.2d at 862. An arbitrator "may, of course, look for guidance from many sources, yet **his award is legitimate only so long as it draws its essence from the collective bargaining agreement**." *Id.* at 863 (emphasis added).

Although "an arbitrator has broad authority with respect to crafting an award and remedies, that power is not limitless. An award that changes the language of a CBA **or that adds new or additional provisions to the agreement fails the essence test**." *Lock Haven University*, 193 A.3d at 496. (emphasis added). Therefore, "where the arbitrator's words exhibit an infidelity to the agreement, courts have no choice but to refuse enforcement of the award." *Id.* Further, regardless of which scope of review applies, "an arbitrator does not have a roving commission to do what he or she believes is necessary to put everything right, to construct a 'better agreement.'" *Marple Township v. Delaware County F.O.P. Lodge 27*, 660 A.2d 211, 215 (Pa. Cmwlth. 1995). Arbitrators must "address the issues submitted within the context of the positions of the parties and effectuate the relief requested," but are not permitted to reform CBAs. *Id.*

Initially we note that despite the trial court's misapplication of the essence test in remanding the matter to the arbitrator, because this Court applies the same test in reviewing the arbitration award as the trial court, in the interest of judicial economy we will apply the essence test ourselves to the arbitration award rather than remand to the trial court to apply the correct standard of review. *See, e.g.*, *State System of Higher*

20

*Education (Cheyney University) v. State College University Professional Association (PSEA-NEA)*, 743 A.2d 405, 413, 416 (Pa. 1999) (After determining the Commonwealth Court misapplied the essence test in reviewing an arbitration award, the Supreme Court, itself, applied the essence test to the arbitration award.); *Northern Cambria School District*, 180 A.3d at 520-22 (After concluding the Court of Common Pleas applied the incorrect standard of review, the Commonwealth Court concluded the arbitration award satisfied the essence test.)

Here, the provision of the CBA at issue, Article IX.A, which is titled "Specialists" and sub-titled "Minimum," provides as follows: "The [District] along with the [Union] recognizes the fact that an adequate number of competent specialists is essential to the operation of an effective educational program." (CBA at Art. IX.A.) Applying the first prong of the essence test, we conclude that "the issue as properly defined is within the terms" of the CBA. *Westmoreland Intermediate Unit #7*, 939 A.2d at 863. The grievance in the instant case involves the District's elimination of two specialist positions. Article IX of the CBA is titled "Specialists" and contains sub-provisions relating to an adequate number of specialists, the amount of time between specialists' scheduled classes, attendance, and the salary rate for the IEP Coordinator specialist position. (CBA at Art. IX.) Accordingly, we conclude that because the grievance relates to specialists and an article of the CBA specifically addresses specialist positions, the dispute is properly within the terms of the CBA.

We next turn to the second prong of the essence test, *i.e.*, whether the arbitrator's interpretation can be "rationally derived from" the CBA. *Westmoreland Intermediate Unit #7*, 939 A.2d at 863. The arbitrator acknowledged that "the CBA does not require a specific or enumerated number of 'specialists.'" (Arbitration Award at 6.) Yet, the arbitrator concluded that "the CBA and [] School Code clearly identified that a reduction in force (RIF) cannot effect [sic] or reduce the learning methods or opportunities to the arts or other services such as library services which would be

21

provide [sic] by the 'specialists.'" *Id.* The arbitrator found that because the elimination of the librarian position resulted in a reduction in the number of books being checked out, gifted students no longer receiving the same level of IEP plan development, and the elimination of a journalism course for gifted students, the needs of the library facility and the student population were "not being met by the current reduction of the full-time [l]ibrarian [p]osition." *Id.* at 7-8. The arbitrator also noted that the needs of the students were "not being met by reassignment of some of the duties previously performed by the [l]ibrarian or the elimination of some of the other classes or duties that were previously performed by the [l]ibrarian." *Id.* at 8. Thus, the arbitrator ordered the reinstatement of the librarian position.

We conclude that the arbitration award is not rationally derived from the language of the CBA. First, as the arbitrator admitted, there is no language in the CBA mandating that the District employ a minimum number of specialists. However, the arbitrator inexplicably concluded that a reduction in force cannot affect or reduce the learning methods or opportunities for library services. The arbitrator did not provide any support for this broad assertion, other than a vague reference to the CBA and School Code.

Article IX.A of the CBA merely states that the parties "**recognize**" that an adequate number of specialists is essential for an effective education program. The dictionary definition of "recognize" is to "admit the fact, truth, or validity of"; to "recall knowledge of: make out as or perceive to be something previously known"; or to "take notice of [such] as to admit the fact or existence of." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1896 (1986). The use of the word "recognize" indicates that the employment of an adequate number of specialists is aspirational, rather than dictatorial. Article IX.A does not mandate that the District employ a minimum number of specialists, but only suggests that the parties have an understanding that specialists are important to the District's overall education program. Accordingly, based on the

22

use of the word "recognize" in Article IX.A and lack of any language in the CBA specifying the requisite number of specialists or a metric for determining the requisite number of specialists, we are unable to conclude that the arbitration award was rationally derived from the language of the CBA.

Given the lack of any language in Article IX.A requiring the District to employ a certain number of specialists or establishing a measurable standard to determine whether the number of specialists was adequate, the arbitrator effectively added new language to the CBA when he construed Article IX.A to conclude that the elimination of the librarian specialist position violated the CBA.  However, under the essence test, an arbitrator may not add additional provisions to a CBA.  *See Lock Haven University*, 193 A.3d at 496.  Because the arbitration award exhibited an infidelity to the actual language of the CBA and attempted to "reform" the CBA by adding new language not contained within the CBA, the award fails to "logically flow" from the CBA.  Consequently, we conclude the award does not satisfy the essence test.

### Conclusion

Because the trial court was not permitted to remand this matter to the arbitrator for the reasons stated in its order and opinion, we reverse the trial court's order to the extent it ordered a remand.  However, because the arbitration award fails the essence test, we affirm the trial court's order, albeit on different grounds, to the extent the trial court vacated the arbitration award.

_____
PATRICIA A. McCULLOUGH, Judge

23

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

California Area School District      :
     :    No. 1570 C.D. 2018
v.      :
     :
California Area Education Association    :
PSEA/NEA,      :
          Appellant      :

## *ORDER*

AND NOW, this 10th day of July, 2019, the August 22, 2018 order of the Court of Common Pleas of Washington County (trial court) is reversed to the extent it remanded the matter to the arbitrator for further proceedings. However, the August 22, 2018 order of the trial court is affirmed to the extent it vacated the arbitration award.

_____
PATRICIA A. McCULLOUGH, Judge