IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| City of Erie | : | |
| | : | No. 150 C.D. 2018 |
| v. | : | |
| | : | Argued: October 16, 2018 |
| General Teamsters Local Union | : | |
| No. 397 (Kelly Kirsch), | : | |
| Appellant | : | |

BEFORE:     HONORABLE PATRICIA A. McCULLOUGH, Judge
                     HONORABLE ANNE E. COVEY, Judge
                     HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY
JUDGE McCULLOUGH                                    FILED:  January 3, 2019

General Teamsters Local Union No. 397 (Union) appeals from the January 19, 2018 order of the Court of Common Pleas of Erie County (trial court) granting the petition of the City of Erie (City) to vacate an arbitration award and reinstating the City's termination of the employment of Kelly Kirsch (Grievant).

**Facts and Procedural History**

The following facts are garnered from the trial court's and Arbitrator's opinions in this matter.  Grievant was employed as an operator at the City's wastewater treatment facility.  (Arbitrator's op. at 2.)  He began this employment part-time in April of 2004 and later became full-time in September of 2009.  *Id.*

## 2015 Arbitration Opinion and Award

Grievant was initially terminated from his employment effective March 17, 2015, based on a poor attendance history, multiple warnings, and three days of consecutive absences beginning on March 14, 2015. (Trial court op., March 16, 2018, at 1-2.) These absences resulted from Grievant's arrest and incarceration on charges of driving under the influence and firearm possession charges. (*Id.* at 2.) The Union thereafter filed a grievance on Grievant's behalf. *Id.* Following an arbitration hearing on December 16, 2015, Arbitrator Robert A. Creo issued an opinion and award concluding that the City did not have just cause to terminate Grievant and directing that he be reinstated to his former position with full back pay. *Id.* The City filed a petition to vacate the arbitration award but the trial court denied the same by order dated October 14, 2016, and the City did not file a further appeal. (Trial court op., March 16, 2018, at 2-3.)

## 2017 Arbitration Opinion and Award

On January 13, 2016, two days before the City filed its petition to vacate the 2015 arbitration award with the trial court, Grievant was arrested and incarcerated on drug charges. (Trial court op., March 16, 2018, at 3.) He had not yet returned to work at that time. *Id.* In February of 2016, the City made a position available to Grievant. *Id.* By letter dated February 24, 2016, the City notified Grievant that his continued absence from work and lack of an acceptable explanation for his absence led to the City's determination to commence an action to again terminate his employment, but the City did afford him the opportunity to respond and offer any information he believed might mitigate the situation or cause the City to reverse its decision. *Id.* By correspondence dated March 9, 2016, the Union responded on Grievant's behalf,

advised the City of his incarceration, and noted his inability to return to work at that time. *Id.*

By letter dated March 21, 2016, the City advised Grievant of his termination effective that date, citing the Union's letter and the reason stated therein as an inadequate excuse for Grievant's absence from his job. (Arbitrator's op. at 2.) Two days later, on March 23, 2016, the Union filed a grievance on Grievant's behalf alleging that Grievant was unjustly terminated in accordance with the just cause provisions of the parties' collective bargaining agreement (CBA). *Id.* A new Arbitrator, Marc A. Winters, was appointed and a hearing was ultimately held on June 9, 2017.[1] *Id.* at 2.

At this hearing, the City presented the testimony of Connie Cook (Cook), its Human Resources Manager. *Id.* at 6. Cook testified that the City could not hold a position open for Grievant. *Id.* Cook also indicated that Grievant himself, not the Union, should have contacted the City and explained his situation, namely his incarceration. *Id.* Cook stated that had Grievant contacted the City himself, the City may have considered not terminating him and allowed him to return to work. *Id.* at 7. Grievant testified on his own behalf, stating that he had never taken, sold, or manufactured narcotics prior to the City's filing of its petition to vacate the 2015 arbitration award. *Id.* Grievant explained that subsequent to this filing he became depressed and felt that he had no alternative but to sell drugs to make money. *Id.*

By opinion and award dated June 16, 2017, the Arbitrator granted the grievance. The Arbitrator concluded that the City failed to establish just cause

---

[1] Grievant was released from his confinement on January 23, 2017. (Arbitrator op. at 4.) By that time, the trial court had denied the City's petition to vacate the 2015 arbitration award reinstating Grievant and said award had been confirmed and finalized. *Id.* On February 9, 2017, the Union filed an unfair labor practice charge with the Pennsylvania Labor Relations Board based upon the City's failure to return Grievant to work or pay him back pay in accordance with the 2015 arbitration award. *Id.* The Union and the City later reached a settlement of this charge whereby the City agreed to pay Grievant his back pay consistent with the 2015 award. *Id.*

3

sufficient to warrant Grievant's termination and directed the City to reinstate Grievant to his former position and to make him whole back to January 24, 2017. (Arbitrator's op. at 9.) While emphasizing that Grievant was responsible for his own conduct, the Arbitrator agreed with the Union that the City, by not complying with the 2015 arbitration award, "severely contributed to Grievant's economic and emotional problems and distress." (Arbitrator's op. at 7.) The Arbitrator also noted that the City made no argument that Grievant's incarceration would adversely affect its public image or its operations, nor did it provide evidence as to any type of burden or hardship it would incur in holding Grievant's position open until his release from jail. (Arbitrator's op. at 7-8.) Finally, the Arbitrator characterized the City's decision to terminate Grievant as "arbitrary, capricious and unreasonable as the reasons given for the termination do not meet the elements of just cause." *Id.* at 9.

**Trial Court Opinion**

The City thereafter filed a petition to vacate the Arbitrator's award with the trial court, arguing that the Arbitrator erred in misapprehending the reason for Grievant's termination as his failure to offer an explanation himself for his absence, rather than its stated reason of unexcused absence from work. The City also argued, *inter alia*, that the Arbitrator erred in finding a right to reinstatement after incarceration for a period of 13 months; placing a burden on it to offer evidence or justification as to why it could not hold Grievant's position open for 13 months; and finding that an open-ended incarceration is a valid excuse for absence from work.

By opinion and order dated January 19, 2018, the trial court granted the City's petition to vacate and reinstated Grievant's termination. The trial court concluded that the City "reasonably terminated [Grievant's] employment on March 21, 2016. The City, further, was not obligated to hold Grievant's position open for an

4

extended, indefinite, open-ended period of time." (Trial court op., January 19, 2018, at 3.) The trial court noted that the Arbitrator's finding that there was no just cause for Grievant's termination was not supported by the record, emphasizing that Grievant's incarceration and the City's inability to keep the position open indefinitely were "adequate excuses and do satisfy the requirements of the CBA." *Id.* at 4. The trial court further explained that "Grievant's self-imposed problems are directly within the scope and context of Section 901[2] and relate to an employee's qualifications, performance, attitude, work habits or personal conduct. In this regard, the Arbitrator failed to apply the 'just cause' definition as contained in the CBA." *Id.*

The Union thereafter filed a notice of appeal with the trial court. In compliance with an order from the trial court dated January 31, 2018, the Union filed a statement of errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure (Pa.R.A.P.). The Union alleged, *inter alia*, that the trial court misapplied the essence test in reviewing the Arbitrator's award, substituted its judgment for that of the Arbitrator, ignored critical facts, and erred in concluding that the Arbitrator's finding of an absence of just cause was unsupported by the record. In its Pa.R.A.P. 1925(a) opinion, the trial court stated that these issues were addressed in its January 19, 2018 opinion and did not need to be addressed further.

---

[2] Section 901 of the CBA addresses the dismissal of an employee and provides, in pertinent part, as follows:

> The Director of a Department may, with the approval of the Manager of Human Resource, dismiss the employee within his respective department at any time for just cause relating to qualifications, performance, attitude, work habits or personal conduct.

(Reproduced Record (R.R.) at 86a.)

5

## Discussion

On appeal, the Union argues that the trial court erred in vacating the Arbitrator's award. More specifically, the Union argues that the Arbitrator's award was rationally derived from, and drew its essence from, the parties' CBA, and that the trial court exceeded its scope of review by substituting its judgment for that of the Arbitrator. We disagree.

This Court recently discussed the extremely deferential standard of review to be applied to labor arbitration awards in *Northern Cambria School District v. Northern Cambria Education Support Professional Association, PSEA/NEA*, 180 A.3d 517 (Pa. Cmwlth. 2018), stating as follows:

> Under the exceptionally deferential essence test, an arbitrator's award must draw its essence from the collective bargaining agreement. *State Sys. of Higher Educ. (Cheyney Univ.) v. State Coll. Univ. Prof'l Ass'n (PSEA-NEA)*, 743 A.2d 405, 413 (Pa. 1999). When applying the essence test, an award should be upheld if: (1) the issue as properly defined is within the terms of the agreement, and (2) the award can be rationally derived from the agreement. *Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educ. Support Pers. Ass'n, PSEA/NEA*, 939 A.2d 855, 863 (Pa. 2007). That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement. *Cheyney Univ.*, 743 A.2d at 413.
>
> . . .
>
> In reviewing an arbitrator's award, we are mindful that an arbitrator's findings of fact are not reviewable on appeal, and as long as he has arguably construed or applied the collective bargaining agreement, an appellate court may not second-guess his findings of fact or interpretation. *Coatesville Area Sch. Dist. v. Coatesville Area Teachers' Ass'n/Pa. State Educ. Ass'n*, 978 A.2d 413, 415 n.2 (Pa. Cmwlth. 2009), *appeal denied*, 989 A.2d 10 (Pa. 2010). A court may not

6

reject an arbitrator's findings simply because it disagrees with them, nor may the court substitute its judgment for that of the arbitrator. *Am. Fed'n of State, Cnty. & Mun. Employees, Dist. Council 88, AFL-CIO v. City of Reading*, 568 A.2d 1352, 1355-56 (Pa. Cmwlth. 2006).

*Id.* at 521.

In the present case, there is no question that the issue of just cause for Grievant's termination was within the terms of the CBA executed by the City and the Union. As noted above, section 901 of the parties' CBA only permits the dismissal of an employee for "just cause." (R.R. at 86a.) This section goes on to define the "just cause" necessary for dismissal as relating to an employee's "qualifications, performance, attitude, work habits or personal conduct." *Id.* Hence, the only question that remained to be decided was whether the Arbitrator's award was rationally derived from the agreement. The trial court concluded that it was not because the Arbitrator added a new provision to the CBA. In this regard, as the City points out in its brief, the Arbitrator essentially added a new, non-negotiated provision into the parties' CBA, *i.e.*, requiring the City to hold open for an indefinite period of time the position of a Union employee. The trial court noted that Grievant's self-imposed problems, most importantly his incarceration on drug charges, were "directly within the scope and context of Section 901 and relate to an employee's qualifications, performance, attitude, work habits or personal conduct." (Trial court op., January 19, 2018, at 4.) As a result of this incarceration, the Arbitrator and the trial court recognized that Grievant failed to report his absence to the City, which ultimately led to his termination.

The trial court also questioned the Arbitrator's reliance on the City's purported lack of evidence as to why it could not hold open Grievant's position for an extended, indefinite period of time. The trial court noted that the Arbitrator himself recognized testimony from Cook, the City's Human Resources Manager, that the City could not hold a position open for Grievant. *See* Arbitrator's op. at 6. As the record

7

reflects, Grievant remained incarcerated and unavailable to work for a period of approximately 13 months.

An arbitrator's award cannot be said to draw its essence from a CBA, and consequently does not meet the essence test, where the award violates the express terms of a CBA by changing the language therein or by "**adding new and additional provisions**." *Millcreek Township School District v. Millcreek Township Educational Support Personnel Association*, 179 A.3d 1167, 1173 (Pa. Cmwlth. 2018) (emphasis in original) (quoting *American Federation of State, County & Municipal Employees, District Council 84 v. City of Beaver Falls*, 459 A.2d 863, 865 (Pa. Cmwlth. 1983)).[3] In *Millcreek Township School District*, an arbitrator interpreted a provision of a CBA that "[n]o work of the bargaining unit shall be sub[]contracted for the life of the [CBA]" as precluding the school district from issuing requests for proposals (RFPs). 179 A.3d at 1171, 1176. We noted that the language of the CBA was "clear and unambiguous" and "completely silent on RFPs." *Id.* at 1172. We concluded that the arbitrator went outside of the CBA to make his determination, and, hence, his award was not rationally derived from the CBA. *Id.* at 1173. Ultimately, we held that "where the arbitrator's words exhibit an infidelity to the agreement, courts have no choice but to refuse enforcement of the award." *Id.*

---

[3] In *American Federation of State, County & Municipal Employees, District Council 84 v. City of Beaver Falls*, the arbitrator concluded that an employee's discharge was not for just cause because the notice of discipline issued by the employer was untimely (the notice of discipline was sent 42 days after the incident that led to the employee's discharge) and constituted an "affront to due process." 459 A.2d at 864. Because the CBA executed by the parties did not contain any provision regarding timely notification of discipline, the common pleas court set aside the arbitrator's award. This Court affirmed the common pleas court's decision noting that the arbitrator improperly added a new time provision to the parties' CBA. We held, "We are aware that we must sustain the arbitrator's award if it is based on anything that can be gleaned as the 'essence' of the bargaining agreement, but this does not include changing the language of the contract or adding new and additional provisions." *Id.* at 865.

Moreover, as our United States Supreme Court explained long ago:

> An arbitrator is confined to interpretation and application of the [CBA]; he does not sit to dispense his own brand of industrial justice. He may, of course, look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement.

*United Steelworkers v. Enterprise Wheel & Car Corporation*, 363 U.S. 593, 599 (1960).

Herein, in sustaining the grievance and directing that Grievant be reinstated to his former position with all attendant rights and privileges, the Arbitrator relied heavily on the fact that "[t]here was no evidence or justification given as to why the City could not hold the Grievant's position." (Arbitrator's op. at 9.) However, there is no provision in the parties' CBA obligating the City to hold a position open and allow a Union employee to return to his position after a lengthy and indefinite absence due to incarceration. As the City states in its brief, "The Arbitrator essentially added to the CBA a right possessed by a union employee to reinstatement despite the employee's indefinite unavailability." (City's Brief at 9.) In other words, the Arbitrator went outside the terms of the CBA to find that an open-ended period of incarceration constituted a valid excuse for an employee's absence. Similar to *Millcreek Township School District* and *City of Beaver Falls*, the Arbitrator added a new provision to the CBA, one that was not bargained for or agreed to by the parties. Hence, the Arbitrator's award directing Grievant's reinstatement was neither rationally derived from, nor drew its essence from, the CBA. Thus, the trial court did not err in granting the City's petition to vacate this award.

Accordingly, the trial court's order is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Erie                      :

                                  :   No.  150 C.D. 2018

              v.               :

                                  :

General Teamsters Local Union    :

No. 397 (Kelly Kirsch),        :

                Appellant    :

## ***ORDER***

AND NOW, this 3rd day of January, 2019, the order of the Court of Common Pleas of Erie County, dated January 19, 2018, is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge