IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| City of Erie | : |
| | : No. 150 C.D. 2018 |
| v. | : |
| | : Argued: May 14, 2020 |
| General Teamsters Local Union | : |
| No. 397 (Kelly Kirsch), | : |
| Appellant | : |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge[1]
HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE P. KEVIN BROBSON, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE ANNE E. COVEY, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED: February 19, 2021


This matter is before the Court on remand from the Pennsylvania Supreme Court for reconsideration on the basis of its decision in *Millcreek Township School District v. Millcreek Township, Educational Support Personnel Association*, 210 A.3d 993 (Pa. 2019) (*Millcreek II*).

**Facts and Procedural History**

The following facts are garnered from the Court of Common Pleas of Erie County's (trial court) and arbitrator's opinions in this matter.  General Teamsters Local

---

[1] This case was assigned to the opinion writer before Judge Brobson succeeded Judge Leavitt as President Judge.

Union No. 397 (Union) is the collective bargaining agent representing certain Union employees of the City of Erie (City). The City and the Union are parties to a collective bargaining agreement (CBA), which provides for the arbitration of grievances relating to that agreement. "Just cause" for termination is defined in Section 901 of the CBA, (Dismissal, Layoff, Demotion, Promotion, Discipline). It provides in relevant part that the City "may . . . dismiss the employee . . . at any time for just cause relating to qualifications, performance, attitude, work habits or personal conduct." (Reproduced Record at 86a.)

Kelly Kirsch (Grievant) was employed as an operator at the City's wastewater treatment facility. (Arbitrator's opinion at 2.) He began this employment part time in April of 2004 and later became full time in September of 2009. *Id.*

Grievant was initially terminated from his employment effective March 17, 2015, based on a poor attendance history, multiple warnings, and three days of consecutive absences beginning on March 14, 2015. (Trial court op., March 16, 2018, at 1-2.) These absences resulted from Grievant's arrest and incarceration on charges of driving under the influence and firearm possession. (*Id.* at 2.)

## 2015 Arbitration Opinion and Award

The Union thereafter filed a grievance on Grievant's behalf. *Id.* Following an arbitration hearing on December 16, 2015, arbitrator Robert A. Creo issued an opinion and award concluding that the City did not have just cause to terminate Grievant and directing that he be reinstated to his former position with full back pay. *Id.* The City filed a petition to vacate the arbitration award, but the trial court denied the same by order dated October 14, 2016, and the City did not file a further appeal. (Trial court op., March 16, 2018, at 2-3.)

2

## 2017 Arbitration Opinion and Award

On January 13, 2016, two days before the City had filed its petition to vacate the 2015 arbitration award with the trial court, Grievant was arrested and incarcerated on drug charges. (Trial court op., March 16, 2018, at 3.) He had not yet returned to work at that time. *Id.* In February of 2016, the City made a position available to Grievant. *Id.* By letter dated February 24, 2016, the City notified Grievant that his continued absence from work and lack of an acceptable explanation for his absence led to the City's determination to commence another action to terminate his employment. *Id.* The City afforded him the opportunity to respond and to offer any information he believed might mitigate the situation or cause the City to reverse its decision. *Id.* By correspondence dated March 9, 2016, the Union responded on Grievant's behalf, advised of his incarceration, and noted his inability to return to work at that time, anticipating his release in the near future when he would then return to work. *Id.*

By letter dated March 21, 2016, authored by the Human Relations Manager, Connie Cook (Cook), the City advised Grievant of his termination effective that date, stating:

> I am in receipt of the letter from the [] Union, dated March 9, 2016. This response from your representative is an inadequate excuse, as is your reason for not reporting to work or contacting your employer, that being your current incarceration.
>
> Therefore, your employment is terminated effective March 21, 2016. Any benefits to which you are entitled will be paid out to you.

(Arbitrator's op. at 6.) Two days later, on March 23, 2016, the Union filed a grievance on Grievant's behalf alleging that Grievant was unjustly terminated in accordance with

the just cause provisions of the parties' CBA. *Id.* A new arbitrator, Marc A. Winters, was appointed and a hearing was ultimately held on June 9, 2017.[2] *Id.* at 2. The arbitrator determined that the sole issue submitted for arbitration was whether the City had "just cause" to terminate Grievant's employment under the CBA.

At the hearing, the City presented the testimony of Cook, who testified that the City could not hold a position open for Grievant. *Id.* at 6. Cook also indicated that Grievant himself, not the Union, should have contacted the City and explained his situation, namely his incarceration. *Id.* Cook stated that had Grievant contacted the City himself, the City may have considered not terminating him and allowing him to return to work. *Id.* at 7. Grievant testified on his own behalf, stating that he had never taken, sold, or manufactured narcotics prior to the City's filing of its petition to vacate the 2015 arbitration award. *Id.* Grievant explained that subsequent to this filing, he became depressed and felt that he had no alternative but to sell drugs to make money. *Id.*

By opinion and award dated June 16, 2017, the arbitrator granted the grievance. Addressing Cook's testimony that the City could not hold the position for Grievant, the arbitrator noted that the City "did not provide any evidence that would indicate any type of burden or hardship to the City for holding his position until Grievant's release from jail." *Id.* at 8. Turning to the actual reason for Grievant's termination, the arbitrator found:

---

[2] Grievant was released from his confinement on January 23, 2017. (Arbitrator's op. at 4.) By that time, the trial court had denied the City's petition to vacate the 2015 arbitration award reinstating Grievant as said award had been confirmed and finalized. *Id.* On February 9, 2017, the Union filed an unfair labor practice charge with the Pennsylvania Labor Relations Board based upon the City's failure to return Grievant to work or pay him back pay in accordance with the 2015 arbitration award. *Id.* The Union and the City later reached a settlement of this charge whereby the City agreed to pay Grievant his back pay consistent with the 2015 award. *Id.*

4

> The City's entire case . . . rest[ed] on the fact that [] Grievant, himself, did not contact the City with a plea and an explanation but relayed the fact that he was incarcerated through his Union, who has represented him throughout his first termination and the arbitration case that would have him reinstated including the City's petition to vacate the Award. The City wanted a response from [] Grievant, not the Union, telling why he couldn't come to work. In return[,] the City would have been willing to consider his return to work after hearing his explanation and circumstances.
>
> Additionally, there is no language in the parties' [CBA] which would preclude an employee, who is incarcerated, from having their union representative speak for them while incarcerated. Likewise, no Employer work rule or City ordinance was presented that would prohibit such from occurring.

*Id.* at 8.

The arbitrator concluded that "the evidence presented at the hearing in support of the charges [was] not sufficient to prove conduct which would satisfy the elements of just cause and justify termination." *Id.* at 9.

## Trial Court Opinion

The City thereafter filed a petition to vacate the arbitrator's award with the trial court, arguing that the arbitrator misapprehended the reason for Grievant's termination as his failure to offer an explanation himself for his absence, rather than its stated reason of unexcused absence from work. The City also argued, *inter alia*, that the arbitrator erred in finding a right to reinstatement after incarceration; placing a burden on it to offer evidence or justification as to why it could not hold Grievant's position open for 13 months; and finding that an open-ended incarceration is a valid excuse for absence from work.

5

By opinion and order dated January 19, 2018, the trial court granted the City's petition to vacate and reinstated Grievant's termination. The trial court concluded that the City "reasonably terminated [Grievant's] employment on March 21, 2016. The City, further, was not obligated to hold Grievant's position open for an extended, indefinite, open-ended period of time." (Trial court op., January 19, 2018, at 3.) The trial court noted that the arbitrator's finding of no just cause for Grievant's termination was not supported by the record, emphasizing that Grievant's incarceration and the City's inability to keep the position open indefinitely were "adequate excuses and do satisfy the requirements of the CBA." *Id.* at 4. The trial court further explained that "Grievant's self-imposed problems are directly within the scope and context of Section 901 and relate to an employee's qualifications, performance, attitude, work habits or personal conduct. In this regard, the arbitrator failed to apply the 'just cause' definition as contained in the CBA." *Id.*

The Union thereafter filed a notice of appeal with the trial court. In compliance with an order from the trial court dated January 31, 2018, the Union filed a statement of errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1925(b). The Union alleged, *inter alia*, that the trial court misapplied the "essence test" in reviewing the arbitrator's award, substituted its judgment for that of the arbitrator, ignored critical facts, and erred in concluding that the arbitrator's finding of an absence of just cause was unsupported by the record. In its Pa.R.A.P. 1925(a) opinion, the trial court stated that these issues were addressed in its January 19, 2018 opinion and did not need to be addressed further.

### This Court's Underlying Decision

By opinion and order dated January 3, 2019, this Court concluded that the trial court did not err in granting the City's petition to vacate the arbitrator's award.

*City of Erie v. General Teamsters Local Union No. 397 (Kelly Kirsch)*, 200 A.3d 1061 (Pa. Cmwlth.), *vacated and remanded*, 218 A.3d 1201 (Pa. 2019).

Applying the highly deferential two-prong "essence test" to grievance arbitration awards, *Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educational Support Personnel Association, PSEA/NEA*, 939 A.2d 855, 863 (Pa. 2007), we first concluded that the issue of just cause for Grievant's termination was within the terms of the CBA executed by the City and the Union. Addressing next whether the arbitrator's award was rationally derived from the CBA, we agreed with the trial court that the arbitrator's award was not rationally derived from the CBA because the arbitrator added a new, non-negotiated provision into the parties' CBA, *i.e.*, requiring the City to hold open for an indefinite period of time the position of a Union employee. We reasoned that an arbitrator's award cannot be said to draw its essence from a CBA, and consequently does not meet the essence test, where the award changes the language therein or adds new and additional provisions. For that proposition, we drew from our decisions in *American Federation of State, County & Municipal Employees, District Council 84 v. City of Beaver Falls*, 459 A.2d 863, 865 (Pa. Cmwlth. 1983),[3] and *Millcreek Township School District v. Millcreek Township Educational Support Personnel Association*, 179 A.3d

---

[3] In *City of Beaver Falls*, the arbitrator concluded that an employee's discharge was not for just cause because the notice of discipline issued by the employer was untimely as it was sent 42 days after the incident that led to the employee's discharge. 459 A.2d at 864. Because the CBA did not contain any provision regarding timely notification of discipline, the common pleas court set aside the arbitrator's award. This Court affirmed the common pleas court's decision noting that the arbitrator improperly added a new time provision to the parties' CBA. We held: "We are aware that we must sustain the arbitrator's award if it is based on anything that can be gleaned as the 'essence' of the bargaining agreement, but this does not include changing the language of the contract or adding new and additional provisions." *Id.* at 865.

1167, 1173 (Pa. Cmwlth. 2018) (*Millcreek I*), *reversed*, *Millcreek II*. We concluded that

> in sustaining the grievance and directing that Grievant be reinstated to his former position with all attendant rights and privileges, the [a]rbitrator relied heavily on the fact that "[t]here was no evidence or justification given as to why the City could not hold [] Grievant's position." (Arbitrator's op. at 9.) However, there is no provision in the parties' CBA obligating the City to hold a position open and allow a Union employee to return to his position after a lengthy and indefinite absence due to incarceration. As the City states in its brief, "The [a]rbitrator essentially added to the CBA a right possessed by a union employee to reinstatement despite the employee's indefinite unavailability." (City's Brief at 9.) In other words, the [a]rbitrator went outside the terms of the CBA to find that an open-ended period of incarceration constituted a valid excuse for an employee's absence. Similar to [this Court's decision in [*Millcreek I*] and *City of Beaver Falls*, the [a]rbitrator added a new provision to the CBA, one that was not bargained for or agreed to by the parties. Hence, the [a]rbitrator's award directing Grievant's reinstatement was neither rationally derived from, nor drew its essence from, the CBA. Thus, the trial court did not err in granting the City's petition to vacate this award. Accordingly, the trial court's order is affirmed.

*City of Erie*, 200 A.3d at 1067.

## Remand

On January 17, 2019, the Union petitioned the Supreme Court for allowance of appeal, arguing that we usurped the role of the arbitrator, ignored the termination letter, and determined that a reason for Grievant's discharge, which was not originally stated for his discharge, justified the termination of his employment. On July 17, 2019, the Supreme Court reversed our decision in *Millcreek I*. By order dated

8

October 29, 2019, the Supreme Court vacated our January 3, 2019 order and remanded for consideration of its decision in *Millcreek II*.

<u>**Analysis**</u>

Because we have been directed to reconsider our decision in the instant case in light of the Supreme Court's decision in *Millcreek II*, we begin with an analysis of that case.

In *Millcreek II*, a school district was party to a CBA with a union representing a bargaining unit consisting solely of custodians for the school district's properties. The CBA provided that "[n]o work of the bargaining unit shall be subcontracted for the life of the CBA." *Millcreek II*, 210 A.3d at 996. During negotiations for a successor agreement, the school district submitted a proposal that included the elimination of the existing "no subcontracting" provision. *Id.* The union rejected the proposal. *Id.* A month later, while negotiations were still ongoing, the school district issued a request for proposals (RFP) for the provision of custodial services. *Id.*

Upon learning that the school district had issued an RFP to subcontract the bargaining unit's work, the union filed a grievance contesting the RFP. *Id.* at 997. The grievance eventually proceeded to arbitration, where an arbitrator determined the school district violated the parties' CBA. *Id.* at 998. Noting that the school district had not entered into a subcontract with the successful bidder, the arbitrator determined that the question of whether the school district's actions constituted subcontracting fell within the confines of the CBA. *Id.* at 999. Relying on witness testimony and the parties' bargaining history to inform his interpretation of the CBA, the arbitrator concluded subcontracting began when the school district decided to pursue outside contracting options, and that the school district's actions violated the CBA. *Id.* The

9

school district filed a motion to vacate the award, which was rejected by the trial court. *Id.* However, this Court reversed the trial court's decision, prompting an appeal.

In reversing our decision in *Millcreek I*, the Supreme Court concluded that we erred in substituting our judgment for that of the arbitrator, who was authorized to make findings of fact and interpret undefined terms in the CBA. *Millcreek II,* 210 A.3d at 1006. The arbitrator had found that the district issued an RFP on subcontracting custodial services as a bargaining tactic in its effort to eliminate the parties' no subcontracting provision. *Id.* at 1006. The Supreme Court explained that, when reviewing the propriety of the award, a court is required to rely on the arbitrator's findings of fact, including his determination that the parties' no contracting provision was intended to prohibit the process of subcontracting. *Id.* at 1006, 1014. The Supreme Court further explained that the arbitrator's interpretation and resulting award reflected a reading of the CBA "that was informed by his understanding of the parties' history and the context." *Id.* at 1006. Accordingly, the Supreme Court concluded the award was rationally derived from the parties' CBA, and found that this Court had

> erred in substituting its own interpretation of the contract for the arbitrator's interpretation where the latter rationally derived from the [CBA]. It erred further in concluding that the arbitrator's award violated a dominant public policy. Under the highly deferential essence test and its exceptionally narrow public policy exception, when reviewing the propriety of the arbitration award, the Commonwealth Court was required to rely on the arbitrator's Findings of Fact, including his view that the parties intended to prohibit the process of subcontracting. Because the Commonwealth Court did not adhere to this standard, we reverse.

*Id.* at 1013.

10

While *Millcreek II* did not alter the highly deferential essence test in any significant way, an important takeaway for purposes of this appeal is the Supreme Court's emphasis of our obligation to rely on the arbitrator's findings of fact, including the meaning of the CBA that was informed by his understanding of the parties' history and the context.

In our original opinion, relying on the language in *Millcreek I* and *City of Beaver Falls*, we noted that an arbitration award must be within the ambit of the CBA, and because the arbitrator's decision to require the City to hold Grievant's position open while he served time in jail for a drug conviction was not a term of the CBA, we held the arbitrator added a non-negotiated provision to the CBA. However, the Supreme Court made clear in *Millcreek II* that reliance must be given to the arbitrator's findings of fact. Here, the arbitrator found the City had an obligation under the CBA to hold Grievant's job open until he was released from jail, and concluded that Grievant was fired ***because he failed to personally call off of work***. The City's unwillingness to keep Grievant's job open while he was incarcerated was not identified in the March 21, 2016 termination letter as a reason for Grievant's discharge. Consequently, it was not considered by the arbitrator in his "just cause" analysis. Rather, it was a remark made by the City's witness to rationalize, ***in hindsight***, Grievant's termination. Although the arbitrator briefly addressed this testimony, he did not find just cause lacking based on the City's failure to justify why it could not hold Grievant's position open.

Instead, the arbitrator found that Grievant was discharged because of his inadequate response to the return to work notice. The arbitrator found that the reason the City discharged Grievant was because he failed to ***personally*** call off work while he was incarcerated, and instead had his Union representative report off for him. The

arbitrator gleaned this from the City's March 21, 2016 termination letter, and Cook's testimony.  The only question before the arbitrator was whether Grievant's failure to personally call off work constituted "just cause" under the CBA.  Based upon the evidence submitted, the arbitrator found that it was not.  Specifically, the arbitrator found that there was no language in the parties' CBA that precludes an employee, who is incarcerated, from having his union representative speak for him while incarcerated. He concluded the parties did not intend that City employees could be discharged if they do not personally report off work.

With our focus redirected to the factual findings of the arbitrator as to the reasons for Grievant's termination, and his interpretation of the CBA, we conclude that the arbitrator's award was rationally derived from the CBA.

Accordingly, the January 19, 2018 order of the trial court is reversed.


_____

PATRICIA A. McCULLOUGH, Judge

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Erie                                  :
                                              :   No.  150 C.D. 2018
          v.                                  :
                                              :
General Teamsters Local Union                 :
No. 397 (Kelly Kirsch),                       :
                    Appellant                 :

## ***ORDER***

AND NOW, this 19th day of February, 2021, the January 19, 2018 order of the Court of Common Pleas of Erie County is hereby REVERSED.


_____
PATRICIA A. McCULLOUGH, Judge